IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRITTANY KAY KUMMER, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN EMBLEY, in his individual capacity, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> No. 2:25-cv-00548-RJS <br><br> District Judge Robert J. Shelby <br><br> Chief Magistrate Judge Cecilia M. Romero |

This case arises out of Defendant Officer Brian Embley conducting a traffic stop of Plaintiff Brittany Kay Kummer.[1]  Before the court is Officer Embley's Motion to Dismiss.[2]  For the reasons explained below, the court DENIES the Motion.

## BACKGROUND[3]

On March 21, 2024, Kummer met a friend at a gas station in Magna, Utah.[4]  Officer Embley was on patrol that evening and was interested in Kummer's friend.[5]  When Kummer left the gas station to drive home around 9:36 PM, Officer Embley followed her.[6]  While following her, Officer Embley ran the license plate of the Honda driven by Kummer.[7]  He learned the

---

[1] Dkt. 1, *Complaint.*

[2] Dkt. 13, *Defendant's Motion to Dismiss with Prejudice* (*Motion*).

[3] The following facts are drawn from the Complaint.  In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff.  *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[4] *Complaint* ¶¶ 7–9.

[5] *Id.* ¶¶ 15–16.

[6] *Id.* ¶¶ 12–13, 27.

[7] *Id.* ¶ 28.

vehicle was not insured and its registered owner had a suspended license.[8]  As Kummer turned onto Copperview Drive, Officer Embley activated his patrol lights and Kummer pulled over.[9]  Prior to the traffic stop, Kummer had been operating the vehicle safely and within the lane lines.[10]  Officer Embley's report falsely stated he observed the Honda "cross the left hand lane marker several times," and he conducted the stop "to investigate driving under the influence and unsafe lane travel."[11]  Neither statement was true.[12]

Officer Embley approached the vehicle and asked for Kummer's driver's license.[13] Kummer explained she left it at home.[14]  Officer Embley said he stopped her because it looked like she was weaving between the lanes and might be driving under the influence of drugs or alcohol.[15]  Embley denied being under the influence.[16]  During this one minute conversation, Officer Embley did not smell alcohol or drugs, see any drug paraphernalia, or observe Kummer exhibiting bloodshot eyes, slurred speech, or slow responses.[17]

Officer Embley returned to his patrol car and entered Kummer's information into his computer.[18]  He learned she had a history of drug charges, but no charges were outstanding.[19] About three minutes into the stop, Officer Embley called for a K9 unit to come conduct a vehicle

---

[8] *Id.*

[9] *Id.* ¶¶ 29–33.

[10] *Id.* ¶ 35.

[11] *Id.* ¶¶ 34–36.

[12] *Id.*

[13] *Id.* ¶¶ 37–39.

[14] *Id.* ¶ 40.

[15] *Id.* ¶¶ 45, 47.

[16] *Id.* ¶¶ 46, 48.

[17] *Id.* ¶¶ 50–53, 81–84.

[18] *Id.* ¶ 54.

[19] *Id.* ¶ 55.

sniff.[20]  Officer Embley was on his computer for approximately two minutes, although none of this time was used to work on a traffic citation.[21]

Officer Embley returned to Kummer and requested she exit the vehicle, which she did.[22] Kummer walked and stood normally; her movement did not suggest she was impaired.[23] Kummer then explained that he may have observed an unusual driving pattern because the screen on her console was glitching and she was probably turning it off.[24]  Officer Embley again asked whether she was under the influence, and Kummer again said no.[25]  Kummer spoke like "she had all of her faculties," and Officer Embley believed she was able to drive and walk.[26]

Slightly after the five minute mark, Officer Embley asked Kummer about her history with law enforcement and drug use.[27]  Kummer responded that she had previously used methamphetamine but had not used since going to rehab a couple years prior.[28]  She pulled up her sleeve to show she did not have track marks.[29]  Officer Embley asked how long it had been since she last used.[30]  Kummer responded, "It's been quite a while.  I wouldn't even be able to tell ya."[31]  Officer Embley then informed Kummer he had called for a K9 unit and explained it

---

[20] *Id.* ¶ 56.

[21] *Id.* ¶¶ 57, 59.

[22] *Id.* ¶¶ 60, 62–63.

[23] *Id.* ¶ 67.

[24] *Id.* ¶¶ 71–72.

[25] *Id.* ¶¶ 73–76.

[26] *Id.* ¶ 84.

[27] *Id.* ¶ 90.

[28] *Id.* ¶¶ 91–95.

[29] *Id.* ¶ 96.

[30] *Id.* ¶ 99.

[31] *Id.* ¶ 100.

would be quicker if she would work with him and tell him if there was anything in the car.[32]  At this point, the stop had lasted almost seven minutes, and Officer Embley had spent none of that time working on a citation.[33]

Kummer admitted to having a pipe and a small amount of a controlled substance but denied using that day.[34]  Officer Embley asked to search the car, and Kummer consented.[35] Officer Embley read Kummer her Miranda warnings and told her he was going to handcuff her while he searched the car.[36]  Kummer asked if she could smoke a cigarette, and Officer Embley agreed.[37]  Around twenty-one minutes into the stop, Officer Embley handcuffed Kummer and placed her in his police car.[38]  Officer Embley then retrieved Kummer's cell phone from the Honda.[39]  He brought the phone to Kummer and asked if she would mind sharing the phone number of the friend she had met at the gas station.[40]  While Kummer said she did not mind, her tone indicated she was clearly reluctant and uncomfortable.[41]  Officer Embley searched the phone.[42]  Around the twenty-nine-minute mark, a K9 officer arrived.[43]  Officer Embley told the K9 officer he stopped Kummer, who had a history of methamphetamine use.[44]  Their

---

[32] Id. ¶¶ 101–02.

[33] Id. ¶¶ 104–05.

[34] Id. ¶¶ 106–10.

[35] Id. ¶¶ 113–14.

[36] Id. ¶¶ 121–22.

[37] Id. ¶ 123.

[38] Id. ¶¶ 125, 128.

[39] Id. ¶ 131.

[40] Id. ¶¶ 132–33, 136.

[41] Id. ¶¶ 134–35.

[42] Id. ¶ 136.

[43] Id. ¶¶ 138–39.

[44] Id. ¶ 140.

conversation lasted two minutes before the K9 officer left the scene without having the dog conduct a sniff of the Honda.[45]  At the thirty-one-minute mark, Officer Embley began searching the Honda.[46]  The search lasted about three and a half minutes.[47]  Officer Embley then returned to the police vehicle, removed the handcuffs, and released Kummer.[48]  He never conducted a field sobriety test.[49]  Kummer was allowed to drive her car away from the scene.[50]

Criminal charges were brought against Kummer.[51]  While the charges were pending, Kummer was unable to obtain TWIC clearance, causing her to lose a job opportunity.[52]  In March 2025, the state court granted Kummer's motion to suppress, finding Officer Embley lacked reasonable suspicion to remove Kummer from her vehicle and prolong her detention by researching criminal activity unrelated to the traffic stop.[53]  The criminal case was dismissed.[54]

On July 10, 2025, Kummer filed this suit against Officer Embley, in his individual capacity, for violating her rights under the United States and Utah Constitutions.[55]  Officer

---

[45] *Id.* ¶¶ 142–43.

[46] *Id.* ¶ 144.

[47] *Id.* ¶ 145.

[48] *Id.* ¶¶ 146–48.

[49] *Id.* ¶ 150.

[50] *Id.* ¶ 149.

[51] *Id.* ¶ 151.  Kummer was charged with possession of a controlled substance and possession of drug paraphernalia. *See* Dkt. 13-2, *Exhibit 2, State v. Kummer Criminal Docket*.  The court considers this document because it is central to Kummer's claim, referred to in the Complaint, and not disputed by the parties.  *See White v. Lucero*, 135 F.4th 1213, 1219 (10th Cir. 2025).

[52] *Complaint* ¶¶ 156–57. The Complaint does not define TWIC.

[53] *Id.* ¶ 153; *see also* Dkt. 13-1, *Exhibit 1, Memorandum Decision and Order* (granting Kummer's Motion to Suppress).

[54] *Complaint* ¶ 154.

[55] *Id.* ¶¶ 161–69.

Embley filed his Motion on September 8, 2025,[56] and with the benefit of oral argument on January 13, 2026, the Motion is ripe for review.[57]

## LEGAL STANDARD

"At the motion-to-dismiss stage, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."[58] "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"[59] A claim is plausible when the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[60] Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[61]

## ANALYSIS

The Complaint brings claims alleging the traffic stop violated Kummer's rights under the United States and Utah Constitutions.[62] Officer Embley asserts he is entitled to qualified immunity.[63] The court concludes he is not entitled to qualified immunity at this stage of the litigation.

---

[56] *Motion*; Dkt. 14, *Memorandum in Opposition to Defendant's Motion to Dismiss with Prejudice* (*Opposition*); Dkt. 15, *Reply Memorandum in Support of Defendant's Motion to Dismiss with Prejudice* (*Reply*).

[57] *See* Dkt. 17, *Minute Entry*.

[58] *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)).

[59] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[60] *Iqbal*, 556 U.S. at 678 (citation omitted).

[61] *Id.* at 679 (citation omitted).

[62] *Complaint* ¶¶ 161–69.

[63] *Motion* at 1.

I.    **Officer Embley Is Not Entitled to Qualified Immunity at this Stage Because Kummer Plausibly Alleges a Violation of a Clearly Established Constitutional Right.**

42 U.S.C. § 1983 provides a vehicle for a civil action against persons acting under color of law.[64]  A Section 1983 claim "requires (1) deprivation of a federally protected right by (2) an actor acting under color of state law."[65]  Qualified immunity is an affirmative defense against a § 1983 claim that "creates a presumption that the defendant is immune from suit."[66]  It "protects all but the plainly incompetent or those who knowingly violate the law."[67]  The purpose is to give "government officials breathing room to make reasonable but mistaken judgments about open legal questions."[68]

To survive dismissal, the plaintiff must "allege sufficient facts that show—when taken as true—the defendant" (1) "plausibly violated his constitutional rights" that (2) "were clearly established at the time of violation."[69]  The court has discretion in deciding which of the two prongs to consider first.[70]  Qualified immunity is a fact-bound inquiry typically resolved on summary judgment.[71]  "District courts may grant a motion to dismiss based on qualified immunity, but asserting a qualified immunity defense via a Rule 12(b)(6) motion subjects the

---

[64] *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, [or] regulation . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitutions and laws, shall be liable to the party injured in an action at law.").

[65] *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (citation modified).

[66] *Est. of Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (citation modified).

[67] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation modified).

[68] *Id.*

[69] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (citation omitted).

[70] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[71] *Kaven*, 765 F.3d at 1194.  *But see Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (explaining there is a "special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of litigation" (citation modified)).

defendant to a more challenging standard of review than would apply on summary judgment" since "the court analyzes the defendant's conduct as alleged in the complaint."[72]

### A. The Complaint Plausibly Alleges Officer Embley Violated Kummer's Constitutional Rights.

Kummer alleges facts that, when taken as true, show Officer Embley plausibly violated her constitutional rights.[73]  The Fourth Amendment secures the right to be free from "unreasonable searches and seizures."[74]  "In analyzing the constitutionality of a traffic stop under the Fourth Amendment, [courts] apply the 'reasonable suspicion' standard for investigative detentions originally set forth in *Terry v. Ohio*."[75]  Under *Terry*, the court conducts a two-step inquiry to determine a stop's constitutionality: (1) whether the stop was "justified at its inception," and (2) if so, whether "the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place."[76]  For purposes of this Motion, Kummer assumes the first step of the inquiry: the stop was justified at its inception based on the registered owner's suspended license and vehicle's lack of insurance.[77]  But she argues the detention became unconstitutional when it was prolonged to investigate crimes that Officer Embley did not reasonably suspect Kummer committed.[78]

---

[72] *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (citation modified).

[73] *See Wilson*, 715 F.3d at 852.

[74] U.S. Const. Amend. IV.

[75] *United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

[76] *Terry*, 392 U.S. at 19–20.

[77] *Opposition* at 9 ("For the purposes of this opposition, Plaintiff will assume without conceding that Embley had reasonable suspicion to pull Brittney over based on the information he says he had about the suspended license and lack of insurance.").

[78] *Id.* at 10.

"Authority for the seizure [] ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."[79]  In *Rodriguez v. United States*, the Supreme Court explained that an officer's mission during a traffic stop is "determining whether to issue a traffic ticket" and conducting "ordinary inquiries incident to the traffic stop."[80]  Investigating other crimes, including conducting a dog sniff, deviates from that mission and cannot constitutionally prolong a stop unless supported by reasonable suspicion.[81]  The Tenth Circuit interpreted *Rodriguez* to mean "an unlawful seizure occurs when an officer (1) diverts from the traffic-based mission for the stop to investigate ordinary criminal conduct, (2) in a way that prolongs (i.e., adds time to) the stop, and (3) the investigative detour is unsupported by any independent reasonable suspicion."[82]  When all three elements are met, the so-called "*Rodriguez* moment" occurs and the seizure is unconstitutional from then on.[83]

Officer Embley diverted from the traffic-based mission and prolonged the stop to investigate ordinary criminal conduct around the five minutes and twenty seconds mark when he asked about Kummer's history with law enforcement and methamphetamine use.[84]  A history of drug charges is not incident to issuing a traffic citation for a suspended license and no insurance.[85]  Whether this investigative detour was supported by arguable reasonable suspicion of drug possession is the dispositive issue for Officer Embley's asserted immunity.

---

[79] *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citation omitted).

[80] *Id.* at 355 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)) (citation modified).

[81] *See id.* at 356–58.

[82] *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022) (citation modified).

[83] *See id.* at 1179.

[84] *See Complaint* ¶ 90.

[85] *See id.* ¶ 28.

Reasonable suspicion exists if articulable facts suggest "criminal activity may be afoot."[86] This is an objective standard.[87] While reasonable suspicion requires the officer to "articulate something more than an inchoate and unparticularized suspicion or hunch," it does not require the officer to "rule out the possibility of innocent conduct."[88] This is not an onerous standard,[89] especially in the § 1983 context where qualified immunity applies if the officer had "arguable reasonable suspicion."[90] In other words, "an officer is entitled to qualified immunity if a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff."[91] This assessment requires considering the "totality of the circumstances."[92] The court must "judge the officer's conduct in light of common sense and ordinary human experience," while also deferring "to an officer's ability to distinguish between innocent and suspicious actions."[93]

The court may only consider facts known to Officer Embley at the point he diverted from his traffic-based mission.[94] Officer Embley argues he had reasonable suspicion based on five facts: (1) Kummer was weaving between lanes, (2) the vehicle did not belong to Kummer, (3) the

---

[86] *Shaw v. Schulte*, 36 F.4th 1006, 1013–14 (10th Cir. 2022).

[87] *See United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) ("The detaining officer's subjective beliefs and intentions are, quite simply, irrelevant." (citation modified)).

[88] *Shaw*, 36 F.4th at 1014 (citations omitted).

[89] *United States v. Moore*, 795 F.3d 1224, 1231 (10th Cir. 2015) (citation omitted); *United States v. Kitchell*, 653 F.3d 1206, 1219 (10th Cir. 2011) (citation omitted).

[90] *Shaw*, 36 F.4th at 1014 (cleaned up).

[91] *Id.* (citation modified).

[92] *Kitchell*, 653 F.3d at 1218 (citation omitted).

[93] *Shaw*, 36 F.4th at 1014 (citation modified) (quoting *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010)).

[94] *See Frazier*, 30 F.4th at 1174.

vehicle's registered owner had a suspended license, (4) the vehicle was uninsured, and (5) Kummer's prior drug charges.[95]  The court considers each factor in turn.

### 1. Weaving Between Lanes

Officer Embley argues reasonable suspicion existed because Kummer was weaving between lanes and weaving suggests impairment.[96]  But the court cannot consider this fact in resolving the Motion.  The Complaint alleges Kummer was driving "safely and within the lane lines" prior to being pulled over, Officer Embley did not actually observe any weaving, and that when Officer Embley asked Kummer about cutting between lanes, Kummer simply provided a probable, innocent explanation.[97]  The motion to dismiss standard requires the court to view all facts in the light most favorable to Kummer.  At this stage, the court must assume Kummer was driving safely and did not weave between lanes.  Thus, Officer Embley cannot rely on Kummer weaving to establish reasonable suspicion.

### 2. Driving a Vehicle that Does Not Belong to Kummer

Officer Embley argues he had reasonable suspicion because Kummer did not own the vehicle and did not provide proof that she was authorized to drive it.[98]  The court also cannot consider this fact because it is not alleged in the Complaint.[99]  Officer Embley cites the

---

[95] *See Motion* at 12–15; *Reply* at 2.  In Reply, Officer Embley raises for the first time the fact that Kummer did not have her driver's license supports reasonable suspicion.  *See Reply* at 2.  The court may not consider new arguments raised in Reply.  *See* DUCivR 7-4(c)(1)(B)(vi).  Accordingly, this fact cannot be used to support dismissal.  Further, even if the court could consider this fact, it would be assigned minimal weight and would not change the analysis at this stage.

[96] *Motion* at 12–13.

[97] *See Complaint* ¶¶ 34–36, 45–46, 71–74 ("Embley stated in his report that he observed the Honda Civic 'cross the left hand lane marker several times . . .'  This was not true.  Brittany had been operating her vehicle safely and within the lane lines. . . .  [Kummer] then explained to Embley the reason that he may have observed an unusual driving pattern (as he claimed).").

[98] *Motion* at 13–17.

[99] *See generally Complaint*.

allegation that states, "Embley ran the license plates of Brittany's Honda and learned the registered owner has a suspended license, and that the vehicle was not insured."[100]  This allegation does not identify who the registered owner is nor their relationship to Kummer.  Since the court may consider only allegations in a pleading when deciding a motion to dismiss, this fact has no bearing on the reasonable suspicion analysis.[101]

### 3.  The Vehicle's Registered Owner Had a Suspended License

Officer Embley argues the fact that the registered owner of the Honda had a suspended license supports finding reasonable suspicion.[102]  The Tenth Circuit has recognized that driving with a suspended license may contribute to an objectively reasonable suspicion of illegal activity.[103]  This fact may support a reasonable suspicion finding.

### 4.  The Vehicle Was Uninsured

Officer Embley argues the fact that the Honda was not insured supports finding reasonable suspicion.[104]  Neither party cites a case considering whether driving an uninsured vehicle supports a reasonable suspicion finding.[105]  In *United States v. Hunnicutt*, the Tenth Circuit did not address whether the "lack of verification of insurance" supported reasonable suspicion.[106]  Even so, the Circuit explained, "the inability to offer proof of . . . authorization to

---

[100] *Complaint* ¶ 28; *see also Reply* at 6.

[101] The court's inability to consider the first two facts Officer Embley relies on illustrates the challenge of disposing of qualified immunity at the motion to dismiss phase.  At this stage, Kummer is entitled to rest on the pleadings and Officer Embley's "conduct *as alleged in the complaint* is scrutinized for objective reasonableness."  *Kaven*, 756 F.3d at 1194 (emphasis in original) (quotation omitted).  In contrast, at summary judgment, the court can consider all evidence before it to conduct the qualified immunity inquiry.  *Id.*

[102] *Motion* at 13–14; *see also Complaint* ¶ 28.

[103] *See United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998) (citing *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995)).

[104] *Motion* at 13–14 (citing *Complaint* ¶ 28).

[105] *See id.*; *Opposition* at 11–16.

[106] *Hunnicutt*, 135 F.3d at 1349 (collecting cases).

operate the vehicle has figured prominently in many of our cases upholding further questioning."[107]  Because insurance is required to operate a vehicle lawfully, this fact weighs in favor of reasonable suspicion.  But the court assigns this fact minimal weight, since no fact in the record here or Tenth Circuit decision on point connects a lack of insurance with drug possession.

5.  Kummer's History of Drug Charges

Officer Embley argues Kummer's history of drug charges supports a finding of reasonable suspicion.[108]  In the Tenth Circuit, criminal history may "weigh in favor of an officer's reasonable suspicion of illegal activity.  But, an individual's criminal record, by itself, is not a sufficient basis for reasonable suspicion."[109]  There, the Circuit assigned minimal weight to a drug trafficking arrest that had occurred nearly ten years prior.[110]  Here, Officer Embley knew Kummer had a history of drug charges but none were outstanding.[111]  The court finds this fact weighs in favor of reasonable suspicion but is not a dispositive factor.

Considering the totality of the circumstances, there are insufficient facts before the court to establish reasonable suspicion that would allow Officer Embley to prolong the stop and inquire about Kummer's drug history.  Reasonable suspicion is a low standard, but it is not so low that a person with prior drug charges loses their Fourth Amendment rights whenever they drive an uninsured vehicle belonging to someone with a suspended license.[112]  More than the

---

[107] *Id.*

[108] *Motion* at 7, 12.

[109] *Shaw*, 36 F.4th at 1016; *see also United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997) ("[P]rior criminal involvement alone is insufficient to give rise to the necessary reasonable suspicion to justify shifting the focus of an investigative detention from a traffic stop to a narcotics or weapons investigation." (citation omitted)).

[110] *Shaw*, 36 F.4th at 1016.

[111] *Complaint* ¶¶ 54–55.

[112] *See Wood*, 106 F.3d at 948 (stating that if "prior criminal involvement" alone provided reasonable suspicion "any person with any sort of criminal record could be subjected to a *Terry*-type investigative stop by a law enforcement officer at any time without the need for any other justification at all") (citation modified)).

facts as pled here is necessary to satisfy qualified immunity at this stage. Accordingly, Kummer has plausibly alleged Officer Embley violated her constitutional rights.[113]

### B.  Kummer's Right Is Clearly Established.

"A right is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains."[114]  Thus, it must be "clear to a reasonable officer that his conduct was unlawful in the situation."[115]  "While the Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality, it has also explained that officials can still be on notice that their conduct violates established law even in novel factual circumstances."[116]  The "analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law."[117]  "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional."[118]  Additionally, "[i]n determining whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving party."[119]

---

[113] *See Truman*, 1 F.4th at 1234–35, 1239.

[114] *Id.* at 1235 (internal quotation marks and citation omitted).

[115] *Vasquez v. Lewis*, 834 F.3d 1132, 1138 (10th Cir. 2016) (quoting *Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1308 (10th Cir. 2015)).

[116] *Shaw*, 36 F.4th at 1013 (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)) (citation modified).

[117] *Reavis Est. of Coale v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020) (quoting *Est. of Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)).

[118] *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)) (citation modified); *see also Shaw*, 36 F.4th at 1013 ("Ultimately, [the court] must assess whether existing precedent has placed the statutory or constitutional question beyond debate." (citation modified)).

[119] *Reavis Est.*, 967 F.3d at 992 (quoting *Thomas v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)).

Here, Kummer's Fourth Amendment right has been recognized by the Supreme Court and the Tenth Circuit. The Supreme Court has clearly established that a traffic stop "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation."[120] An officer's mission during a traffic stop is "determining whether to issue a traffic ticket" and conducting "ordinary inquiries incident to the traffic stop."[121] Without independent reasonable suspicion, investigating other crimes is an unconstitutional detour from that mission.[122]

In *Rodriguez*, a police officer pulled over a driver who had veered onto the highway shoulder.[123] After running a records check and issuing a warning, the officer instructed the driver to exit the vehicle until another officer arrived and a dog sniff could occur.[124] The Supreme Court held the drug sniff was not "part of the officer's traffic mission."[125] The Tenth Circuit has clearly established *Rodriguez* means a traffic stop becomes unlawful as soon as an officer "(1) diverts from the traffic-based mission for the stop to investigate ordinary criminal conduct, (2) in a way that prolongs (i.e., adds time to) the stop, and (3) the investigative detour is unsupported by any independent reasonable suspicion."[126]

In *Shaw v. Schulte*, the Tenth Circuit applied this standard at the summary judgment stage to facts similar to the facts here.[127] There, an officer conducted a traffic stop for speeding.[128]

---

[120] *Rodriguez*, 575 U.S. at 350 (citation modified).

[121] *Id.* at 355 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)) (citation modified).

[122] *See id.* at 356–58.

[123] *Id.* at 351.

[124] *Id.* at 352.

[125] *Id.* at 356.

[126] *Frazier*, 30 F.4th at 1173 (citation modified).

[127] *Shaw*, 36 F.4th at 1010–12.

[128] *Id.* at 1010.

When the officer called for a K9 sweep, he diverted from the traffic-based mission and prolonged the stop to investigate drug trafficking.[129]  The Circuit evaluated the facts available to the officer at the time he extended the stop and concluded reasonable suspicion did not exist.[130] The court found four factors weighed in favor of reasonable suspicion but each was assigned minimal value: (1) the amount of time it took the driver to stop, (2) the destination of the vehicle, (3) the vehicle was not registered to the driver but to his father, and (4) the driver had a drug trafficking arrest from ten years prior.[131]  With respect to the prior arrest, the Circuit recognized "previous criminal history may also weigh in favor of an officer's reasonable suspicion of illegal activity," but assigned the prior arrest minimal weight because it occurred nearly ten years prior to the stop.[132]  Despite four factors weighing in favor of reasonable suspicion, the court concluded the officer was not entitled to qualified immunity at the summary judgment stage.

The court finds *Shaw* on-point to the facts here.  Both cases involve a traffic stop: Shaw for speeding and Kummer for a registration and license issue.  Both cases involve a paperwork issue: Shaw's car was not registered to him, and Kummer's vehicle was uninsured and registered to a driver with a suspended license.  Both cases involve a driver with a prior drug charge.  *Shaw* clearly established that its set of facts amounted to a constitutional violation.

Officer Embley argues *Shaw* did not put him on notice of the constitutionality of his actions because the facts are sufficiently dissimilar.[133]  He first argues the type of traffic stop distinguishes this case from *Shaw* because "speeding alone does not suggest impairment, while

---

[129] *Id.* at 1010, 1016.

[130] *Id.* at 1014–16.

[131] *Id.* at 1016.

[132] *Id.*

[133] *Reply* at 6–7.

weaving in and out does."[134]  But, as explained above,[135] Kummer alleges she drove safely within the lines and the stop was related only to the license and insurance issues.[136]  Because the court is limited to the allegations in the complaint at the motion to dismiss stage,[137] any alleged weaving cannot distinguish this case from *Shaw*.  Officer Embley does not otherwise argue that a stop for speeding is meaningfully different than a stop related to license and insurance issues.

Second, Officer Embley argues *Shaw* is distinguishable because there, the court assigned minimal weight to the registration issue where the driver had a clear connection to the vehicle's registered owner but here, Kummer "was not related to the registered owner and there was no evidence connecting her to the vehicle."[138]  Again this fact was not alleged in the Complaint and thus Officer Embley cannot rely on it to distinguish this case from *Shaw*.[139]

Finally, Officer Embley argues *Shaw* is distinguishable because Shaw provided his driver's license and insurance card and had a criminal drug charge from ten years prior, while Kummer did not have her license on her and she had prior charges involving controlled substances.[140]  While these differences do exist, the court does not view them as sufficient to render *Shaw* inapplicable.  Finding otherwise would send Kummer on "a scavenger hunt for prior cases with precisely the same facts," which the Tenth Circuit has instructed the standard does not require.[141]  *Shaw* is sufficiently analogous to the facts—as alleged in the Complaint—to

---

[134] *Id.* at 6.

[135] *See supra* nn. 96–97 & accompanying text.

[136] *See Complaint* ¶¶ 28, 34–36; *Opposition* at 9–10.

[137] *See Kaven*, 756 F.3d at 1194.

[138] *Reply* at 6.

[139] *See supra* nn. 98–101 & accompanying text.

[140] *Reply* at 6–7.

[141] *Reavis Est.*, 967 F.3d at 992.

provide fair warning to Officer Embley that his alleged conduct was unconstitutional.[142]  After *Shaw*, the "contours [of the right] are sufficiently clear that a reasonable officer would understand that what he is doing violates that right."[143]  Thus, at the time of the traffic stop, it was clearly established that Officer Embley did not have "reasonable suspicion to remove Ms. Kummer from the car and question her about drug use" based on the facts alleged.[144]  Accordingly, Officer Embley is not entitled to qualified immunity at this stage.

## II.    The Utah Constitutional Claim Also Survives.

Kummer also brings a claim that Officer Embley violated her rights under the Utah Constitution.[145]  Officer Embley argues the Utah claim is coextensive with the federal constitutional claim.[146]  Since the federal constitutional claim survives, the state constitutional claim also survives.

## CONCLUSION

For the reasons explained above, the court DENIES the Motion to Dismiss.[147]

---

[142] *Id.* (citation modified) (quoting *Tolan*, 572 U.S. at 656); *see also Shaw*, 36 F.4th at 1013 ("Ultimately, [the court] must assess whether existing precedent has placed the statutory or constitutional question beyond debate." (citation modified)).

[143] *Vasquez*, 834 F.3d at 1139 (reversing summary judgment and holding officer not entitled to qualified immunity when prolonged a traffic stop related to the visibility of a temporary tag to conduct a K9 search without reasonable suspicion).

[144] *Motion* at 3.

[145] *Complaint* ¶¶ 162, 165.

[146] *Motion* at 18.  Officer Embley argues that if Kummer identifies a more expansive right under the Utah Constitution than the right guaranteed by the U.S. Constitution, her claim fails under *Spackman ex rel. Spackman v. Board of Education*.  *Id.* at 18–19 (citing 16 P.3d 533, 538 (Utah 2000)).  The court declines to reach this argument. Parties agree the federal right is either coextensive or narrower than the state right.  Because the federal claim survives, the state claim necessarily survives too.

[147] Dkt. 13.

SO ORDERED this 19th day of February, 2026.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge